Walter L. Widlar and John E. Fitzgerald, Appellees,
v. Federal Life Insurance Company, Appellant.

Gen. No. 24,575.

1. ASSUMPSIT, ACTION OF, § 44*—*when action for money had and
received will not lie.* Where R, as vice president of a corporation,
offered to a Life Insurance Company, through H, its president, to
whom he owed a note for $3,000, to sell negotiable notes of the cor-
poration of the face value of $10,000, to net such corporation $9,000
and to give R $1,000 as commission which he promised to apply upon
the note held by H, and where the transaction was accordingly com-
pleted after the insurance company had been informed of the fact
relating to commissions, and where three checks, two aggregating
$9,000 and one for $1,231.67 given to R's order who indorsed the first
two to his principal, and the third to H who had it cashed by the
insurance company and credited the amount on the note held by
him, and where R did not disclose to his principal the facts as to the
$1,231.67 check, there was no basis for the claim that the insurance
company acted collusively and had received money to the use of the
corporation.

2. BILLS AND NOTES, § 235*—*when holder of notes has authority
to sell same.* The holder of negotiable notes duly indorsed in blank
is clothed with authority to sell the notes and receive the purchase
price.

3. BILLS AND NOTES, § 235*—*when purchaser of notes from agent
not liable to principal for money paid to agent.* A purchaser who
closed a sale of notes owned by a corporation, with an agent of the
latter authorized to sell and receive the purchase price, was not re-
sponsible to the agent's principal for what the agent afterwards did
with the money.

4. APPEAL AND ERROR, § 578*—*necessity of formal exceptions to
judgment.* Since the amendment of 1911 to section 81 of the Practice
Act (J. & A. ¶ 8618), formal exceptions to a judgment are no longer
necessary, and hence need not have been preserved.

5. FRAUD, § 44*—*when corporation must bear loss of money paid
to agent.* Under the rule that as between two innocent parties a
loss must fall on him who puts it in the power of a third party to
commit the act causing it, the corporate owner of notes which it
authorized its agent to sell was responsible for the agent's fraudu-
lent use of the purchase money.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same
topic and section number.

Appeal from the Municipal Court of Chicago; the Hon. HARRY M. FISHER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Reversed with findings of fact. Opinion filed October 10, 1919. Rehearing denied October 21, 1919.

CHARLES A. ATKINSON, for appellant.

SAMUEL B. HILL, for appellees.

MR. JUSTICE BARNES delivered the opinion of the court.

This is a suit brought by appellees, assignees of the Chicago Stove & Range Company, herein referred to as the Stove Company, against appellant for money had and received for the use of plaintiffs, basing the claim upon fraud and misrepresentation, which in our opinion was not sustained by a preponderance of the evidence.

These material facts are undisputed: Said Stove Company owned certain negotiable notes of the face value of $10,000 and accrued interest, secured by a trust deed, which it indorsed and handed to its vice president Ramsey to sell. He undertook a sale to appellant through its president Isaac M. Hamilton, to whom he was indebted on his promissory note for $3,000, telling Hamilton that he tried to sell the notes' elsewhere, that $7,500 was the best offer he had received, that he was authorized to sell to net the Stove Company $9,000, that he would have the excess for his commission, which he would apply on such indebtedness if appellant purchased, and that the notes were amply secured for their face value. Hamilton said he would have to, and did, submit the entire proposition to appellant's finance committee, which saw no impropriety in such an arrangement if the notes were amply secured. After investigating the security the committee recommended the purchase for their face value of $10,231.67, which was made by giving appellant's

checks to Ramsey's order for $5,000, $4,000 and $1,231.67, respectively. That for $4,000 was at once delivered by Ramsey to the Stove Company, that for $5,000 was held 2 days for investigation of title and then delivered to Ramsey and by him to said company, and that for $1,231.67 (the excess over $9,000) was indorsed by Ramsey and handed to Hamilton, who got it cashed by appellant and applied the amount on Ramsey's note. Ramsey did not disclose to his principal the facts respecting the check for $1,231.67.

On this state of facts there is no basis for the claim that appellant had and received money to and for plaintiff's use. Appellant never retained or received back any of the purchase price. While Hamilton in his private capacity after full disclosure to the company of which he was president received part of it relying on Ramsey's representation that it was his commission in the transaction, appellant was in no way concerned with such disposition of it so long as upon full knowledge of the facts it deemed the notes worth their face and was willing to pay that sum for them, and cashing its own check afterwards for Hamilton's accommodation did not alter the situation.

Ramsey's authority to sell and appellant's right to purchase are not questioned, and could not well be, for Ramsey came with the negotiable notes duly indorsed in blank by the holder and thereby clothed with authority to sell them and receive the purchase price. (Story on Agency, sec. 444.) It is not a question here of the agent's authority to sell, which is apparently conceded, nor, so far as appellant is concerned, of limitation on the agent's power to handle the proceeds of the sale, for appellant not only had no notice with respect thereto but received no portion of the proceeds and had no direct interest in the arrangement between Hamilton and Ramsey.

Contrary to appellees' contention, we find nothing

in the transaction or the evidence indicating appellant's entry into a collusive arrangement with Ramsey to conceal the facts with regard to the sale. That Hamilton was to receive Ramsey's alleged commission was not a condition to the sale so far as appellant was concerned. Appellant having closed the deal with an agent of the Stove Company authorized to sell and receive the purchase price, it was not responsible to his principal for what he afterwards did with the money. The fact that he subsequently became an agent of appellant had no relation to the fact that at that time he was acting solely as agent for the Stove Company, not only within the apparent but actual scope of his authority, and if he was guilty of any fraudulent act, then as between the two innocent parties, appellant and appellees (or their assignor), the loss must on a familiar principle fall on him who puts it in the power of a third party to permit the act causing it. Appellant was in no phase of the case responsible for the use by another's agent of the purchase money he was authorized to receive from it. As said in *Mason v. Bauman,* 62 Ill. 76:

"A man is always bound by the fraudulent acts of his own agent perpetrated on a third person, whilst acting under his authority in reference to the subject of his agency; but we are aware of no rule or any adjudged case which holds that a person can ever be bound by the fraudulent acts of another man's agent."

Appellees urge that questions as to the sufficiency of the evidence cannot be raised in the absence of an exception to the judgment where, as here, the case was tried without a jury, but overlook that since the amendment of 1911 to section 81 of the Practice Act (J. & A. ¶ 8618) formal exceptions are no longer necessary, and hence need not be preserved. (*Miller v. Anderson,* 269 Ill. 608.) The contention that the bill of exceptions is incomplete is also untenable.

In this view of the evidence we need not discuss other points raised. The judgment will accordingly be reversed and one entered here for appellant with findings of fact.

*Reversed with findings of fact.*

Findings of fact. We find that appellant, Federal Life Insurance Company, did not at the commencement of this suit, nor prior thereto, have or receive any money to the use of appellees or their assignor, Chicago Stove & Range Company, from the proceeds of the sale of the notes referred to in appellees' statement of claim, or otherwise, and that said appellant was not a party to any fraud or misrepresentation whereby said Chicago Stove & Range Company failed to receive the full amount of said proceeds.